1  WO

2

3

4

5

6  **UNITED STATES DISTRICT COURT**

7  **DISTRICT OF ARIZONA**

8  Shirley D. Stone and John W. Stone,      )      CV 05-2626 PHX DCB
                                            )
9            Plaintiffs,                     )
                                            )
10 v.                                        )
                                            )
11 Judge Redfield T. Baum, Judge Sarah Sharar)      **ORDER**
   Curley, Judge Randolph Haines, Judge James M.)
12 Marlar and U.S. Trustee Ilene LaShinsky of the)
   District of Arizona Bankruptcy Court; Kent)
13 Harding and his attorneys Scott M. Clark and)
   Paul Henderson; Arizona Municipal Judge Lex)
14 Anderson and Judge Michael Orcutt; Fanfare)
   Media Works, Inc. and Attorney Steve)
15 Weatherspoon; Safeway Foods, Albertsons Food)
   and Drug, Inc.; Kym Pasqualini; KPHO TV, a)
16 Meredith Corporation, KREM TV a Belo)
   Corporation; Robert Reed and former disbarred)
17 attorney Robert Suzenski; Arizona State Judge)
   Gary Donahoe and Judge Peter B. Swann;)
18 Federal Judge Susan Bolton, Senior Federal)
   Judge Earl Carroll, Senior Federal Judge Paul K.)
19 Rosenblatt, and Judge Frederick Martone;)
   Citicapital and Attorney Mary Farrington-Lorch;)
20 Phoenix Police Chief Jack Harris; State Bar of)
   Arizona Attorneys Robert B. Van Wyck and)
21 John Furlong; FBI Director Robert Mueller, U.S.)
   Marshal Steve Borak, U.S. Attorney Paul K.)
22 Charlton, Asst. U.S. Attorneys Richard Patrick)
   and Raynett Passos; Former U.S. Attorney)
23 General John Ashcroft, President G. W. Bush;)
   and 1-100 Jane or John Does. All Federal and)
24 State Government Employees are being sued in)
   their Individual and Persona Capacity,      )
                                            )
25            Defendants.                     )
   _____)

26

27

28

This Court finds Plaintiffs to be vexatious litigants.  Defendant Albertsons is awarded sanctions against Plaintiffs.  Albertsons is entitled to attorney fees and costs associated with this action and an injunction against Plaintiffs prohibiting further lawsuits against it.  The Complaint is barred by res judicata and fails to state a claim upon which relief may be granted.  The Court dismisses the Complaint with leave to amend.  Failure to comply with the mandates of this Order in the filing of an Amended Complaint shall result in the issuance of a vexatious litigant Order enjoining Plaintiffs from future filings in the United States District Court for the District of Arizona without prior review and permission. *A copy of this Order shall be sent to all the United States District Judges in this district.*

## Vexatious Litigant

On August 30, 2005, Plaintiffs filed this Complaint, which is 74 pages long. Plaintiffs summarily allege violations of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution and such other State and Federal laws as may be applicable." (Complaint at ¶ 1.)  Plaintiffs seek relief and damages pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, for "failing to act to prevent and regulate the wrongdoing and desecration of the court by Federal and State governmental employees and non-government actors and, corruptly interfering with the Plaintiffs' due process and equal protection rights under the United States Constitution, including rights protected in the Fifth and Fourteenth Amendments. *Id.*  Additionally, Plaintiffs allege a RICO cause of action.  Plaintiffs assert federal question jurisdiction, diversity jurisdiction, and pendant jurisdiction over various state causes of action.

This is Plaintiffs' eighth action filed in federal court in the district of Arizona.  Many of the Defendants named here were either parties, attorneys representing parties, or judges who decided prior cases filed by these Plaintiffs.  With each judicial failure, Plaintiffs file the next cause of action, creating a snowballing effect by naming the same defendants and adding the attorneys and judges they hold responsible for their defeat.  For example, repeat

defendants are as follows:  1) defendants in CV 98-1087 PHX ROS were Jesse and Jacquelyn Jackson, Operation Rainbow Push, Inc., Gregory and Verlyn Calhoun, and Calhoun Enterprises, Inc.; 2) defendant in CV 98-8324 PHX PGR was Anthony Mason; 3) defendant in CV 99-1897 PHX MS was Albertsons Inc., 4) defendants in CV 02-784 PHX PGR were Anthony Mason, Albertsons Inc.; Jesse and Jacquelyn Jackson, Operation Rainbow Push, Inc., David Bodney, Peter Swann, Judge Randolph Haines, Brenda Moody Whinery, Richard Cuellar, Joseph Guzinski, and Jeffrey Klein; 5) defendant in CV 02-1389 PHX PGR was Albertsons, Inc.; 6) defendants in CV 03-562 PHX SRB were Fanfare Media Works, and Safeway Inc.; 7) defendants in CV 03-1585 PHX SRB were Judge Sarah Sharer Curley, and the United States of America, and 8) this case again names Albertsons Inc., Judge Sarah Sharer Curley, Fanfare Media Works, Inc., Judge Randolph Haines, Safeway Food and Drugs, and Judge[1]Peter Swann.  In this action, Plaintiffs also sue four federal district court judges, four federal bankruptcy court judges, President George W. Bush, former U.S. Attorney General John Ashcroft, FBI Director Robert Mueller, U.S. Attorney Paul K. Charlton, several assistant U.S. Attorneys, and seek to add two more federal district court judges that have issued rulings in this case since its inception.

This action is dismissed as frivolous.  Many of the Defendants named in this action are entitled to dismissal on the basis of res judicata and collateral estoppel.  Others must be dismissed on the basis of judicial and prosecutorial immunity.  The action is also subject to dismissal for failure to state a claim upon which relief can be granted.

---

[1]Defendant Judge Peter Swann was appointed to the Superior Court in 2003.  The allegations against him in this case are based on his role as counsel for Defendant Albertsons.  With no disrespect intended, this Court refers to the Honorable Peter Swann as Defendant Swann, herein, to distinguish between the allegations against him and Plaintiffs' allegations against numerous other judges for judicial acts committed in their capacity as judges.

1

2

<u>Dismissal of Plaintiffs' Complaint based on Res Judicata; and Motion for Rule 11 Sanctions[2]</u>

3

4

5

The Stones have filed five other lawsuits against Albertsons, three appeals and numerous motions in which they have asserted identical allegations of conspiracy and fraud arising from Albertsons' purchase of two lawsuits from the Stones' former bankruptcy estate, and Albertsons' filing of a proof of claim.  At least five final judgments have been entered rejecting these claims.

6   (Albertsons and Swann's (A/Ss') Motion to Dismiss with Prejudice (MD) at 1; Albertsons and

7   Swann's (A/Ss') Motion for Sanctions (MS) at Ex. A: list of litigation.)

8           For all of the reasons stated in the Motion to Dismiss filed by Albertsons, this action

9   is subject to dismissal with prejudice as to Albertsons, and Albertsons is entitled to sanctions

10  against Plaintiffs in the amount of the costs and fees incurred to defend this case and in the

11  form of an injunction prohibiting Plaintiffs from filing any further actions against Albertsons

12  arising from the transactions and events summarized below.

13          The Court finds that this case, while summarily asserted to be a RICO action, is

14  based on the same transactions that formed the basis of the Stones' five prior lawsuits against

15  Albertsons.

16          The Stones first sued Defendant Albertsons in 1998 in Arizona Superior Court, *Stone*

17  *v. Albertsons*,  No. CV 98-1889, alleging that Albertsons breached a settlement agreement

18  concerning Stones' bulletin board advertising business.  Albertsons filed a counterclaim for

19  $400,000 to $500,000 in back rent.  When the case was dismissed as a sanction against the

20  Stones for repeated violations of an order sealing the case, the Stones filed their second case

21  against Albertsons in federal district court: CV 98-1087 PHX ROS.  (A/Ss' MD at Ex. A:

22  Memorandum Decision, BAP No. AZ 01-1498, filed September 9, 2002, at 2-4.)

23          In July 1998, the Stones filed a voluntary Chapter 11 bankruptcy petition, whereupon

24  the two lawsuits became property of the bankruptcy estate.  *Id.* at 3.  The petition was

25  converted to a Chapter 7 proceeding, assigned to Defendant Judge Sarah Sharer Curley, who

26

27          [2]Albertsons and Peter Swann's Motion to Dismiss and Motion for Sanctions.

28                                                      4

appointed a trustee, Anthony Mason, who concluded there was little or no merit to the lawsuits and resolved to abandon them.  In an attempt to resolve the two lawsuits, Albertsons offered to purchase both actions from the estate for $14,000 and a waiver of any proof of claim for the value of its state court counterclaim.  *Id.* at 4-5.  With the approval of the bankruptcy court, Mason conducted a public auction of the claims, at which no bidders appeared.  *Id.* at 5-6.  The Stones appeared, but did not bid.  *Id.*, Ex. D: Sale Order, filed August 10, 1999, at 4.  On August 10, 1999, the Bankruptcy Court approved the sale of the lawsuits to Albertsons.  *Id.* at 5.  The Stones filed objections and moved for reconsideration of the Sale Order, which was denied on March 31, 2000.  Plaintiffs filed an appeal to the district court, CV 99-1738, PHX PGR, which was dismissed for lack of prosecution by Defendant Judge Paul G. Rosenblatt on August 1, 2000.

The Stones also objected to Albertsons' proof of claim, which was the subject of the bankruptcy Sale Order, as a false claim.  Defendant Judge Curley denied the objection as moot.  Plaintiffs appealed the denial to the Bankruptcy Appellate Panel (BAP), which dismissed it as moot.  *Id.*, Ex. B: Memorandum Decision, BAP No. AZ 00-1549, filed July 13, 2001.  The Ninth Circuit affirmed the dismissal.  *Stone v. Albertsons, Inc.*, 51 Fed. Appx. 753 (9th Cir. 2002).

In addition to the filings in the Chapter 7 proceeding described above, Plaintiffs filed two adversary actions in the bankruptcy courts, one on August 10, 1999, and one on January 4, 2000.  Both were dismissed because the court found the adversary actions contained the same nucleus of operative facts carried through the debtors' objections to the sale of the claims.  "It's the same issue presented over and over, that there is collusion, that there is fraud. . . . "  ((A/Ss' MD, Ex. A: Memorandum Decision, BAP No. AZ 01-1498, filed September 9, 2002, at 7 (quoting Transcript of Hearing before Judge Curley, March 31, 2000 at pp. 36-37)).  On July 23, 2001, Plaintiffs filed a third adversary proceeding, which Defendant Judge Curley also dismissed as barred by claim preclusion (res judicata).  She

1    reasoned: "The Debtors have simply rehashed old grounds in an attempt to re-litigate a fraud

2    claim against Albertson's which this Court has already found, on three separate occasions,

3    to be without merit." *Id.* at 9 (quoting Memorandum Decision, USBC NO. 98-824 PHX-

4    SSC, filed September 17, 2001, at pp. 6-7.)

5        Plaintiffs appealed to the BAP and filed motions for sanctions and injunctive relief

6    against Albertsons and Judge Curley.  Plaintiffs asserted that "Judge Curley rigged her

7    decisions and orders with deceptive and malicious lies . . . [Judge Curley and Albertsons,]

8    along with [the trustee and his attorney,] have performed a RICO scheme in the halls of

9    justice that is a complete defilement of . . . the law." *Id.*, Ex. J: Motion for Injunctive Relief,

10   filed July 22, 2002 in BAP AZ 01-1498, at 15.  Plaintiffs asked that Judge Curley be handed

11   over to the proper authorities for criminal prosecution.  *Id.*  On September 9, 2002, the BAP

12   affirmed Judge Curley's dismissal of the three adversarial proceedings as barred by res

13   judicata and denied Plaintiffs' motions.  *Id.*, Ex. A: Memorandum Decision, filed September

14   9, 2002 in BAP AZ 01-1498,  at 18-19.

15       On February 4, 2002, the Stones filed a fourth lawsuit against Albertsons, styled as

16   a Motion for Declaratory Relief, admitting the repetition of their assertions: "the Debtors

17   have claimed and continue to claim that Albertsons is not a legitimate creditor of the Debtors

18   and that the State Court Appeal that the Defendant based Albertsons' creditor status on, and

19   its Proof of Claim, never existed." *Id.*, Ex. K: Motion for Declaratory Relief at 2.  Again

20   Defendant Judge Curley issued a detailed Memorandum Decision, explaining why the action

21   was barred by principles of res judicata.  *Id.*, Ex. C: Memorandum Decision, USBC 98-8324

22   at 8-12.

23       Fifth, Plaintiff's filed a First Amended Complaint on September 10, 2002, in federal

24   district court, CV 02-784 PHX-PGR, alleging that "Albertsons, Albertsons' attorneys and

25   others 'orchestrated' a fraudulent 'RICO scheme' to allow Albertsons to purchase the Stones'

26   lawsuits against the Rev. Jesse Jackson and Albertsons from the bankruptcy estate." *Id.*, Ex.

27

28                                    6

N: Complaint at 3-4, 11.  The RICO scheme consisted of Albertsons' purchase of the estate assets, the filing and waiver of its proof of claim, and the Bankruptcy Court's approval of the sale.  *Id.* at 10.  After defendants filed a motion to dismiss, Plaintiffs moved to dismiss the action without prejudice.  Defendant Judge Rosenblatt granted the motion and dismissed the action on March 18, 2003.

Lastly, the Stones have been enjoined by Defendant Superior Court Judge Gary Donahoe from contacting Defendants David J. Bodney and Peter S. Kozinets, attorneys for Defendant Albertsons.  The injunction was entered after the Stones left several threatening and harassing voice mail messages for Defendants Bodney and Kozinets.  After Defendant Judge Donahoe entered the injunction, the Stone's filed a Motion to Vacate the Injunction, asserting that Judge Donahoe unlawfully prevented the Stones from making a citizen's arrest of Albertsons' lawyers.

In this action, Plaintiffs allege that Defendant Judge Donahoe told them that "they would be arrested if they attempted to arrest the wrongdoers [Albertsons' attorneys] at their homes or offices," and Plaintiffs allege that "he entered an order of harassment against them to prevent the warranted arrests and prosecution of defendants."  (Complaint, filed August 30, 2005, at ¶¶ 93, 247.)

A review of Plaintiffs' recent Complaint, the sixth cause of action filed against Albertsons, reflects the accuracy of Judge Curley's assessment that the core of Plaintiffs' claims revolve around the assertion that Albertsons engaged in a fraudulent manner with regard to its filing of the proof of claims and other presentations to the Bankruptcy Court which resulted in the wrongful and illegal sale of Plaintiffs' lawsuits against Albertsons and Jesse Jackson to Albertsons.  This is evident  from the allegations, including the RICO claims, charged in ¶¶ 23, 52-70, and 289-97 of the Complaint.

This Court refers the Plaintiffs to the detailed discussions in the Memorandum Decisions issued by Judge Curley explaining the principles of res judicata and why these

claims are barred from being reurged in subsequent litigation.  As well, the Plaintiffs should re-read the discussion by the Ninth Circuit Bankruptcy Appellate Panel, filed in BAP No. AZ-01-1498 KRYB, Bk. No. 98-8324 PHX-SSC, applying the four-part test to determine that the lawsuit is barred by res judicata.  (A/Ss' MD, Ex. A: Memorandum Decision at 12-19.)  This Court will not, in an exercise of futility, attempt to restate what these other courts have so completely explained to the Plaintiffs.  Even given the repeated explanations, it appears that Plaintiffs can not be persuaded that res judicata bars them from re-litigating these claims against Albertsons.

Albertsons is entitled to sanctions under Fed. R. Civ. P. 11(b)(1)-(2) for its costs and attorneys' fees associated with defending this suit.  Under Federal Rule 11, a party filing a pleading must certify that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the pleading is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless litigation costs, and that the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

For all the reasons stated in the explanations above and in Albertsons' Motion to Dismiss, the claims against Albertsons are barred by res judicata.  Under the circumstances, Plaintiffs have been so thoroughly informed regarding the lack of any procedural and/or legal merit to their claims as to eliminate any possible confusion or questions that might have otherwise existed due to Plaintiffs' pro se status.

Because the action filed here involves the same parties and the same transactional nucleus of facts as the prior suits and it seeks to relitigate issues that have been conclusively resolved in the prior suits, and because Plaintiffs have been repeatedly informed that such repetitive suits are barred by res judicata, there can be no conclusion except that Plaintiffs filed this case for an improper purpose, such as to harass Albertsons and/or cause Albertsons undue litigation costs.  Rule 11 sanctions are warranted.

Sanctions may also be imposed under 28 U.S.C. § 1927, 42 U.S.C. § 1988 and the Court's inherent power.  Sanctions may be imposed on pro se litigants where there is evidence of bad faith due to multiple proceedings which are unreasonable and vexatious. *Wages v Internal Revenue Service*, 915 F.2d 1230, 1235-36 (9th Cir. 1989).  Plaintiffs have had their day in court as against Albertsons, several times over, and the litigation they continue to press here becomes vexatious and burdensome on the parties and the Court and robs other meritorious cases of their due process.  The federal courts possess inherent power to impose sanctions, "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Aloe Vera of America, Inc. v. United States*, 376 F.3d 960, 964-65 (9th Cir. 2004); *Patton v. County of Kings*, 857 F.2d 1397, 1381 (9th Cir. 1988).

This Court also has the power, pursuant to 28 U.S.C. § 1651(a) and its inherent powers, to issue an order enjoining Plaintiffs from filing any further actions or papers in this court without first obtaining leave of this Court. *DeLong v. Hennessey*, 912 F.2d 1144, 1146-1149 (9th Cir. 1990).  Plaintiff has been given notice that Albertsons seeks an injunction preventing Plaintiffs from filing any further actions, any further motions or other matters involving the alleged conduct of Albertsons, its counsel, employees or agents without pre-filing review and permission. *Id.* (discussing that such an extreme sanction only be imposed after party to be sanctioned is given notice and opportunity to respond).  Plaintiffs have responded to Defendants' motion, and the Court has set forth the record above of the exceptional circumstances in this case which merit imposition of such a vexatious litigant order as to Albertsons. *Id., see also: United States v. New York Tel. Co.*, 434 U.S. 159, 171-73 (1977) (court has power to issue orders necessary to prevent frustration of proper administration of justice); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983) (court has power to reinforce the effects of collateral estoppel and res judicata by issuing injunction against repetitive litigation); *Clinton v. United States*, 297 F.2d 899, 901 (9th Cir. 1961) (subjecting another to repeated, baseless and vexatious suits

1   on some particular subject matter is sufficient ground for issuance of injunction); *Parker v.*

2   *Kitzhaber*, 2000 WL 776646 at * 6 (Or. April 21, 2000) (enjoining pro se plaintiff from filing

3   future actions without leave of court after he had filed six actions based on defendants'

4   allegedly racist conspiracy; pattern of relitigation).

5        The Court finds that sanctions in the form of Defendant Albertsons' costs and

6   attorney fees associated with its defense in this case are warranted.  The Court also enjoins

7   Plaintiffs from filing any further actions, any further motions or other matters involving the

8   alleged conduct of Albertsons, its counsel, employees or agents without pre-filing review and

9   permission.

10       *Sua sponte*, this Court considers whether or not it should impose a blanket injunction

11  against Plaintiffs filing any and all further actions or papers without pre-filing review and

12  permission.  The Court finds that the facts discussed below involving the remaining

13  allegations made against the remaining Defendants in Plaintiffs Complaint reflect exceptional

14  circumstances to support the entry by this Court of a blanket vexatious litigant order against

15  Plaintiffs.  Specifically, the Plaintiffs exhibit a pattern of filing lawsuits alleging claims that

16  have been decided by other courts and are barred by principles of res judicata and collateral

17  estoppel, and Plaintiffs file lawsuits against the attorneys representing their opponents and

18  the judges adjudicating the cases.  As this Court explains below, such claims are frivolous.

19  The prolific filings by these Plaintiffs of these types of claims result in a huge waste of

20  judicial effort and time.  "Flagrant abuse of the judicial process cannot be tolerated because

21  it enables one person to preempt the use of judicial time that properly could be used to

22  consider the meritorious claims of other litigants."  *DeLong*, 912 F.2d at 1148.

23       This Court is convinced, based on Plaintiffs' litigious record, that unless enjoined

24  they will continue their practice and pattern of vexatious and harassing attempts to relitigate

25  cases resolved against them.  While this Court finds that there is adequate justification to

26  impose an injunction against all future filings by the Plaintiffs, without leave of the Court,

27

28                                          10

1   this is an extraordinary measure which this Court will not take unless it is absolutely

2   necessary. The Court shall give Plaintiffs one last chance to self monitor and regulate their

3   use of the federal courts. The Court dismisses the Complaint filed by the Plaintiffs on

4   August 30, 2005, for the reasons set out in this Order, and grants Plaintiffs leave to file an

5   Amended Complaint to state justiciable claims.

6                    Dismissal of Plaintiffs' Complaint for Failure to State a Claim[3]

7             For all the reasons stated in the Defendants' motions this action is also subject to

8   dismissal because the Complaint is not a short and plain statement of the claim showing that

9   the pleader is entitled to relief as required by Fed. R. Civ. P. 8(2) nor is it a concise and direct

10  averment as required by Fed. R. Civ. P. 8(e)(1).

11            There need not be an elaborate recitation of every fact the Plaintiffs may rely upon

12  at trial in order to withstand a motion to dismiss, but there must be a finding that the

13  Complaint gives the Defendants "fair notice of what the [P]laintiff[s'] claim is and the

14  grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Conclusory and

15  vague allegations will not support a cause of action, *Ivey v. Board of Regents of the*

16  *University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); nor, can liberal construction of

17  Plaintiff's Complaint supply essential elements necessary to sustain this action. *Id.*; *Haines*

18  *v. Kerner*, 404 U.S. 519 (1972). The Complaint must contain sufficient details so that this

19  Court can determine whether or not a justiciable claim exists as to each Defendant. Fed. R.

20  Civ. P. 8(a).

21

22

23            [3]The following Defendants seek dismissal of the Complaint for Plaintiffs' failure to state a

24  claim, pursuant to Federal Rules 8: Fanfare, Weatherspoon, Albertsons; Swann, KREM TV;
    Harding; Clark; Henderson, and Safeway. These Defendants correctly note that Plaintiffs'

25  Complaint fails to comport with Fed. R. Civ. P.10(b) because the contents of the numbered
    paragraphs in the Complaint fail to be statements of a single set of circumstances and each claim

26  founded upon a separate transaction or occurrence is not stated in a separate count. While there is

27  some leeway, Rule 10 must be complied with as far as practicable.

28                                                     11

1       As Defendants Fanfare and Weatherspoon note, Plaintiffs" liberal use of the term
2    "the Defendants," with no attempt to link an alleged violation to a particular Defendant,
3    makes it impossible to discern which allegations are made against which Defendants.  Given
4    there are 64 pages and 265 predicate acts alleged in the Complaint to support its 9 counts of
5    alleged violations, the general reference to "the defendants" makes it an impossible
6    Complaint to answer.  It is also impossible for a Defendant to answer the Complaint because
7    it alleges violations in a conclusory and vague fashion so that Defendants are incapable of
8    discerning what conduct was allegedly committed that resulted in a: wrongdoing; violation
9    of the False Claims Act and other federal laws and Constitutional provisions; breach of a
10    duty owed to Plaintiffs and/or society at large, and a pattern and practice of racketeering.
11    There is no way for the numerous Defendants in this case or for this Court to determine
12    whether or not Plaintiffs state a justiciable claim against each and every Defendant.

13       The Rule 8 standard contains "a powerful presumption against rejecting pleadings
14    for failure to state a claim." *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 386 (5th
15    Cir.1985); *see also Hall v. City of Santa Barbara,* 833 F.2d 1270, 1274 (9th Cir.1986) ("It
16    is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with disfavor
17    and is rarely granted.'") (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice
18    & Procedure* § 1357, at 598 (1969)).

19       The Supreme Court has explained that "it may appear on the face of the pleadings
20    that a recovery is very remote and unlikely but that is not the test." *Gilligan v. Jamco
21    Development Corp.* 108 F.3d 246, 248 -249 (9th Cir. 1997) (quoting *Scheuer v. Rhodes,* 416
22    U.S. 232, 236 (1974)).  In reviewing the sufficiency of a complaint, "[t]he issue is not
23    whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer
24    evidence to support the claims." *Id.*

25       Generally, a *pro se* litigant should be given an opportunity to amend the complaint
26    to overcome a deficiency unless it is clear that no amendment can cure the defect.  *Eg.,*

27

28                          12

1  *Potter v. McCall*, 433 F.2d 1087, 1088 (9th Cir. 1970); *Noll v. Carlson*, 809 F.2d 1446 (9th

2  Cir. 1987).  The Court shall, therefore, allow the Plaintiffs to file an Amended Complaint to

3  more clearly and concisely make their allegations so as to state a claim, except that Plaintiffs

4  shall cease and desist any filings that are harassing and vexatious, meaning that they shall not

5  file claims that are barred by res judicata or collateral estoppel, nor shall they file claims that

6  are wholly frivolous.[4]  Frivolousness exists if the Plaintiffs would not be entitled to relief

7  under any arguable construction of law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

8  (1989).  Factual frivolousness includes allegations that are "clearly baseless," "fanciful,"

9  "fantastic," or "delusional."  *Id.* at 327-28.  A finding of factual frivolousness is appropriate

10  when the facts alleged rise to the level of the irrational or the wholly incredible, whether or

11  not there are judicially noticeable facts available to contradict them, *id.,* and legal

12  frivolousness justifies dismissal where a complaint is based on "an indisputably meritless

13  legal theory. . . ," *id.* at 327.

14       Plaintiffs claims against judges, attorneys acting within the scope of a judicial

15  proceeding, and government attorneys and agents exercising prosecutorial judgment are

16  frivolous as a matter of law under the doctrine of judicial immunity.

17  <u>Dismissal of Plaintiffs' Complaint based on Judicial Immunity</u>

18       "The rule of judicial immunity applies to judges of general jurisdiction and to all

19  persons who are an integral part of the judicial process."  48A C.J.S. *Judges* § 209 (June

20  2005).  "Indeed, judicial immunity serves to provide absolute immunity from subsequent

21  damages liability for all persons, governmental or otherwise, who are integral parts of the

22  judicial process," extending to prosecutors, administrative law judges, and state bar

23  associations, their personnel and committees, and to all governmental agencies and executive

24  branch officials performing quasi-judicial functions.  *Id.*  (citations omitted).  "'Absolute

25  

26      [4]The Court is aware that Complaints are routinely examined for frivolousness pursuant to

27  28 U.S.C. § 1915, when plaintiffs proceed *in forma pauperis*, however, the Court conducts a frivolous analysis here because of Plaintiffs' pattern of filing frivolous and vexatious litigation.

28

immunity' refers to the right to be free not only from the consequences of the litigation's results, but from the burden of defending oneself altogether.  46 Am. Jur.2d *Judges* § 68 (August 2005).

"Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacities."  *Olson v. Idaho State Board of Medicine*, 363 F.3d 916, (9th Cir. 2004) (citing *Stump v. Sparkman*, 435 U.S. 349, 364 (1978)). Judges are absolutely immune from civil liability for damages for their judicial acts.  *Mullis v United States Bankruptcy Court*, 828 F.2d 1385, 1388-89 (9th Cir. 1987).  In order for judicial conduct to fall within "clear absence of all jurisdiction," an exception to the doctrine of judicial immunity, a judge must have acted with clear lack of all subject matter jurisdiction.  *Id.* at 1389-90.

Every Judge named in Plaintiffs' Complaint is so named as a direct result of his or her involvement in the adjudication of a lawsuit or motion unfavorable to the Plaintiffs.  In most instances, Plaintiffs do no more in the Complaint than to refer to the lawsuit over which the Judge presided, if that.  In many instances, Plaintiffs simply leave it to this Court to match the named judicial Defendant up to some lawsuit.  For example, Plaintiffs have filed notices attempting to add the Honorable Roslyn O. Silver and the Honorable Stephen M. McNamee to this lawsuit as defendants without offering any explanation for the requested additions, except the obvious prior rulings by these judges in this case.[5]

---

[5]On November 18, 2005, Plaintiffs filed a Motion for Recusal of Judge Roslyn Silver and Motion for Joinder of Jane Doe defendant Judge Roslyn Silver (document 63).  On December 7, 2005, Plaintiffs faxed a document to the Court captioned, "Federal District Judge Stephen McNamee Guilty of Treason ADDS to His Charges and the other Defendants with Aiding the Escape to Flee Justice."  To avoid any appearance of impropriety, 28 U.S.C. §455(a), Judge Silver voluntarily granted Plaintiffs' request for recusal and Judge McNamee ruled on Plaintiffs emergency motion and transferred this matter to this Court.  Neither concession, however, was required by law or rule of this Court.  A judges' prior ruling in a case is absolutely not a basis for recusal.  "The standard for recusal under 28 U.S.C. §§ 144, 455 is `whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986).  The alleged prejudice must result from an extrajudicial source; a judge's prior adverse ruling is not sufficient cause for recusal." *Id.* A motion for recusal based entirely on prior adverse rulings is insufficient and will be denied.  *Mayes v.*

To the extent that this Court is being asked to allow the amendment to add these judges, Rule 15a of the Federal Rules of Civil Procedure provides as follows:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party;  and leave shall be freely given when justice so requires.

*See also*: LR CIV. 15.

Leave to amend, however, is not proper in the presence of any of the following four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.   *Griggs v. Pace America Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987)).   Generally, this determination should be made with all inferences in favor of granting the motion.  *Id.*  Here, the amendments to add these judicial Defendants fail for futility.

The Complaint fails against all the named judges in this action because there is no question that subject matter jurisdiction existed in each instance.   The alleged acts were judicial acts, taken within each court's subject matter jurisdiction, and as such the Defendant judges are immune from suit.  *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th cir. 1986) (en banc).

Judicial immunity protects the proper administration of justice so "'that a judicial officer in exercising the authority vested in him, is free to act upon his own convictions, without apprehension of personal consequences to himself.'"  *Olson*, 363 F.3d at 922. (citing *Bradley v. Fisher*, 13 Wall. 335, 347 (1871)).   Recognizing these considerations, courts have extended the protections of absolute immunity to individuals performing functions necessary to the judicial process.  *Id.* (citing *Miller v. Gammie*, 335 F.3d 889, 895-96 (9th Cir. 2003)).

*Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984).

15

"Indeed, judicial immunity is viewed as necessary to protect the judicial process." *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 485 (1991)).  Extending the protections of absolute immunity to prosecutors reflects the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.'" *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976)).

"Under certain circumstances, absolute immunity is also extended to agency representatives performing functions analogous to those of a prosecutor or a judge." *Id.* (citing *Miller*, 335 F.3d at 898).  "Such immunity assures the independent functioning of executive officials acting in a quasi-judicial capacity, thereby ensuring that they can exercise their adjudicative discretion without fear of intimidation or harassment." *Id.* (citing *Butz v. Economou*, 438 U.S. 478, 515-17 (1978))

Accordingly, the principles of absolute immunity protect the government attorneys and agency officials, such as the Defendant attorneys from the United States Attorney General's Office and investigators from the Federal Bureau of Investigations (FBI). Plaintiffs allege that these Defendants refused to investigate individuals they sought to have investigated, prosecuted, and arrested for alleged participation in the conspiracy against them.  Like the judges, these Defendants, prosecutors and FBI agents, were added as alleged coconspirators for failing to take action favorable to the Plaintiffs.  Adding coconspirators in this fashion creates a snowballing effect which ironically threatens to destroy the conspiracy claim by raising questions of factual frivolousness, which exists when the facts alleged rise to the level of the irrational, fanciful, fantastic, delusional, or wholly incredible.

To prove conspiracy under 1983, an agreement or a meeting of the minds to violate the plaintiffs' constitutional rights must be alleged.  *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey*, 673 F.2d

at 268.   To allege a conspiracy claim under 42 U.S.C. § 1985, they must establish: the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance of the conspiracy; and a resulting injury.  *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998).  In other words, to state a conspiracy claim against a Defendant, the Plaintiffs must allege facts that show that a specific Defendant did a specific act, based on an agreement with another Defendant to deprive them of the equal protection under the law.

Lastly, Plaintiffs may not sue a lawyer in private practice for violations of their civil rights because private practice attorneys are not state actors.  *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (holding that plaintiff cannot sue opposing counsel under section 1983 "because he is a lawyer in private practice who was not acting under color of state law" and "plaintiff's conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process are insufficient.)  *See also*: *Price v. Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991); *Kirtley v. Rainey*, 326 F.3d 1088, 1093-95 (9th Cir. 2003)).

<u>Dismissal of Plaintiffs' Complaint for Abatement</u>[6]

A case involving the same core facts as those alleged here is currently pending before the Defendant Judge Susan R. Bolton, CV 03-562 PHX SRB.  On March 25, 2003, the Stones filed the complaint against Fanfare Media Works, Inc. (Fanfare) and Safeway, alleging that they entered into a contractual agreement with Fanfare to promote and sell Plaintiffs' "V.J. Alert Bench Program for the Missing," allegedly created by the Plaintiffs to find missing people, and alleging claims against Safeway for its involvement in the bench advertising program.

The case against Fanfare and Safeway progressed until July 26, 2005, when it was stayed because Plaintiffs filed for Chapter 13 bankruptcy.   The last order entered by Defendant Judge Bolton directed the dismissal of the action, without further notice on

---

[6]Defendant Safeway's Motion to Dismiss.

17

January 26, 2006, unless prior thereto, a motion to continue the stay is filed or the court is advised that the bankruptcy stay has been lifted and the parties are ready to proceed with the case.  On July 26, 2005, Defendant Bankruptcy Judge James M. Marlar, dismissed the Chapter 13 bankruptcy proceeding for failure to file a statement of affairs, schedules or a Chapter 13 bankruptcy plan, as well as for failure to pay the filing fee required for bankruptcy cases.  Plaintiffs have not, however, given notice to Judge Bolton regarding the dismissal of the bankruptcy proceeding and her case remains, stayed and subject to dismissal on January 26, 2006.

"It is settled law that the pendency of a prior action, in a court of competent jurisdiction, between the same parties, predicated upon the same cause of action and growing out of the same transaction, and in which identical relief is sought, constitutes good grounds for abatement of the later suit." *O'Reilly v. Curtis Pub. Co.*, 31 F. Sup. 364, 364-65 (Mass. 1940) (citing *Watson v. Jones*, 80 U.S. 679, 681 (1871)).  Any concerns regarding the right of access to a federal forum are moot when, like here, two federal district courts are involved. Then, there is little trouble in finding a discretionary power to abate the second action. *Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817, 820 (9th Cir. 1975).[7]

The Court has reviewed the complaint filed here and the Complaint filed in CV 03-562 PHX-SRB and, as stated by Safeway in its Motion to Dismiss, "the two are between the same parties, predicated upon the same causes of actions, transactions, and/or occurrences, and seek the same or similar relief, at times verbatim." (Safeway's MD at 5-6.)  As a result, the latter Complaint filed here on August 30, 2005 must abate and be dismissed.

---

[7]Plaintiffs should note that the principles behind the rule for abatement are similar to those supporting the doctrines of res judicata and collateral estoppel, which are as follows: 1) friction created by the appearance that the second court is interfering with the first; 2) the waste of judicial resources caused by litigation in two courts; 3) the unnecessary burden placed on already overcrowded dockets; 4) the dual burden placed on litigants; and 5) the possibility that dual litigation might involve the courts in an  unseemly race to judgement. *Id.*

To the extent the Plaintiffs attempt to raise a RICO claim[8] in relation to the transactions, activities, or occurrences that predicate the cause of action filed against Fanfare and Safeway, they must do so in the case pending before Judge Bolton, CV 03-562 PHX-SRB, because the doctrine of res judicata will not only bar the claims litigated therein, but will also bar relitigating of claims that could have been asserted in the previous action between the parties. *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998).

For the same reasons that this action is abated as to Defendant Safeway, it abates as to Defendant Fanfare, the other party named in the action pending before Judge Bolton: CV 03-562 PHX-SRB.

Conclusion

For all of the reasons stated in the various Defendants' motions to dismiss, the Plaintiffs' Complaint is subject to dismissal. The Court finds that the majority of the claims, as stated in the Complaint, are frivolous, and all are subject to dismissal for failure to state a claim.  Only because the Plaintiffs act pro se, this Court shall allow Plaintiffs to file an Amended Complaint.

The Amended Complaint must contain sufficient factual details so that this Court can determine each and every claim existing against **each Defendant**.  The Plaintiff must refer by name to each particular Defendant so that it is possible to determine which Defendant is being charged with responsibility for each particular grievance. *Jackson v. Nelson*, 405 F.2d 872, 873 (9th Cir. 1968).  It must be clear what injury resulted from each alleged grievance.

The Amended Complaint must be clearly designated as "Amended Complaint" on the face of the document. The Amended Complaint must be retyped or rewritten in its

---

[8]The Court notes that as alleged in the Complaint pending here, CV 05-2626 PHX DCB, the Plaintiff fails to state a RICO claim against Safeway for all the reasons stated in Safeway's Motion to Dismiss.  (Safeway's MD at 7-12.)

1  entirety and may not incorporate any part of the original Complaint or any other document,

2  by reference.  Local Rule 1.9(e).

3       Furthermore, because of Plaintiffs' history of filing abusive and harassing

4  complaints, the Amended Complaint shall not include any claims which have been

5  adjudicated by other courts,[9] or allegations against attorneys, prosecutors or judges based

6  solely on their involvement with the judicial process of adjudicating such claims.  The

7  Amended Complaint shall be stricken, if such allegations are included.  The Amended

8  Complaint must specify the constitutional right allegedly violated and allege the specific

9  conduct each Defendant allegedly committed that violated that right.  Any conspiracy claim

10 must include facts to support a finding that there was a meeting of the minds between the

11 coconspirator Defendants.

12      A vexatious litigant Order shall issue, if Plaintiffs continue to file frivolous and

13 harassing claims.  This Court believes that there is an adequate record to support such an

14 Order.  Plaintiffs are cautioned to take care in all future filings, including the filing of the

15 Amended Complaint, to avoid frivolous claims and the abusive use of this Court and to

16 comply with the directives of this Order as to how to state a proper claim.  Failure to comply

17 /////

18 /////

19 /////

20

21 _____

22      [9]This includes the adjudicated claims addressed in the Order issued by Judge McNamee, filed
   on December 1, 2005, which arise from the eviction proceedings against Plaintiffs and related justice
23 court rulings and the bankruptcy court rulings lifting the bankruptcy stays to allow the eviction
   proceedings to go forward against Plaintiffs, resulting in the eviction of Plaintiffs and ultimate sale
24 of alleged business and personal property.  As Judge McNamee noted, the propriety of these courts'
   rulings is not before this Court because Plaintiffs failed to timely appeal them.  The Order issued on
25 December 1, 2005, resolves the Plaintiffs' emergency motion filed on September 19, 2005
   (document 3), Plaintiffs' emergency motion filed on September 26, 2005 (document 28), and
26 Plaintiffs' Second Motion for Sanctions . . . filed on October 24, 2005 (document 37).  All are
27 denied.

28                                                        20

with this directive may result in an injunction being issued against Plaintiff to prohibit future filings in the United States District Court for the District of Arizona.

**Accordingly,**

**IT IS ORDERED** that sanctions shall be imposed against Plaintiffs in favor of Defendant Albertsons in the form of Albertsons' costs and attorney fees associated with this action.

**IT IS FURTHER ORDERED** that Plaintiffs are enjoined from filing any further actions, any further motions or other matters involving the alleged conduct of Albertsons, its counsel, employees or agents without pre-filing review and permission.

**IT IS FURTHER ORDERED** that all the Defendants' motions to dismiss (documents 10, 14, 22, 32, 40, 41, 43, 53) are GRANTED; the Complaint is dismissed with leave to amend.

**IT IS FURTHER ORDERED** that Plaintiffs' motions are DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs have LEAVE TO AMEND their Complaint to state specific factual allegations against proper Defendants. THE AMENDED COMPLAINT MUST BE CLEARLY DESIGNATED AS "AMENDED COMPLAINT" ON THE FACE OF THE DOCUMENT. The Amended Complaint must state specific allegations against proper Defendant(s), named as Defendant(s); and identify who participated in which activities alleged in the Complaint; and state what injury, if any, Plaintiffs suffered as a result of the activities of each Defendant. THE AMENDED COMPLAINT MUST BE RETYPED OR REWRITTEN IN ITS ENTIRETY AND MAY NOT INCORPORATE ANY PART OF THE ORIGINAL COMPLAINT BY REFERENCE. Local Rule 7.1(d).

**IT IS FURTHER ORDERED** that in the event Plaintiffs choose to file the Amended Complaint, they shall do so by January 30, 2006.

1    **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to DISMISS

2  all claims and to close this case, without further notice to Plaintiffs, if Plaintiffs fail to file

3  the Amended Complaint by January 30, 2006.

4    **IT IS FURTHER ORDERED** that in the event the Plaintiffs' file an Amended

5  Complaint, it shall not include any claims which have been adjudicated by other courts nor

6  allegations against attorneys, prosecutors, or judges based solely on their involvement with

7  the judicial process of adjudicating such claims. The Amended Complaint shall be stricken,

8  if such allegations are included and a vexatious litigant Order shall issue, without further

9  notice to or opportunity for hearing from Plaintiffs.

10    **IT IS FURTHER ORDERED** that all other pending motions are DENIED as moot.

11    **IT IS FURTHER ORDERED** that Plaintiffs shall serve upon Defendants, or if

12  appearance has been entered by counsel, upon counsel, a copy of every further pleading or

13  other document submitted for consideration by the Court. Plaintiffs shall include with the

14  original document and copy, to be filed with the Clerk of the Court, a certificate stating the

15  date a true and correct copy of the pleading or document was mailed to Defendants or

16  counsel. Any paper received by a District Court Judge or Magistrate Judge which has not

17  been properly filed with the Clerk of the Court may be disregarded by the Court.  Plaintiffs

18  may not file any document by fax.  Any such attempt shall be disregarded by this Court and

19  the Clerk of the Court shall discard the faxed document and shall not enter it in the record.

20    **IT IS FURTHER ORDERED** that the Plaintiff shall comply with the Local

21  Rules of Practice for the United States District Court, District of Arizona. A copy of the

22  Local Rules may be found under Rules of Court on the Court's internet site:

23  http://www.azd.uscourts.gov.  Also available on the website for the Plaintiff's review is a

24  pamphlet, "Filing a Complaint on Your Own Behalf," which may be found under Operations

25  & Filing.

26

27

28

**IT IS FURTHER ORDERED** that in the event Plaintiffs proceed with this action, they must follow the Federal Rules of Civil Procedure and the Local Rules of Practice for the U.S. District Court of Arizona (local rules).[10] Plaintiff is instructed to take special notice of Local Rule 7.2 which provides specific requirements for civil motions, especially subsection (i) which provides that failure to file a timely response, or any other such non-compliance, "may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily."

**IT IS FURTHER ORDERED** that at all times during the pendency of this action, Plaintiff shall immediately advise the Court of any change of address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date. The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that a copy of this Order shall be sent by the Clerk of the Court to the judges of the United States District Court for the District of Arizona.

DATED this 20th day of December, 2005.

David C. Bury
United States District Judge

---

[10]The Local Rules of Practice for the United States District Court, District of Arizona are on file with the Clerk of this Court and with the Pima County Law Library. A copy of the rules may also be purchased for $35.00. Please, contact the Clerk's office with any request to purchase the Local Rules of Practice.